**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SEALED PLAINTIFF,

                            Plaintiff,

             v.

SEALED DEFENDANT 1, *et al.*,

                           Defendants.

1:26-CV-536
(GTS/DJS)

---

**APPEARANCES:**

SEALED PLAINTIFF
Plaintiff, *Pro Se*
Ballston Spa, NY 12020

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

The Clerk has forwarded for review a Complaint filed by Plaintiff. Dkt. No. 1, Compl. The filing fee in this action has not been paid, but Plaintiff has filed a motion to proceed *in forma pauperis*. Dkt. No. 2. That motion has been granted. Plaintiff has also filed a motion to proceed under a pseudonym. Dkt. No. 3. The matter has been referred to the undersigned for an initial review pursuant to L.R. 72.3.

- 1 -

## I. FACTUAL ALLEGATIONS IN THE COMPLAINT

The Complaint alleges that Plaintiff is a "Black man" with "documented disabilities" that "substantially limit one or more major life activities." Compl. at ¶¶ 6-8. The Complaint asserts claims pursuant to the Americans with Disabilities Act ("ADA"), the Fair Housing Act ("FHA"), the Rehabilitation Act ("RA"), the Civil Rights Act, and various federal civil rights statues, as well as several New York state statutes, including the New York State Human Rights Law, New York Real Property Law, and New York Mental Hygiene Law. *Id.* at ¶¶ 1 & 88. The Complaint seeks both monetary and injunctive relief. *Id.* at pp. 14-16.

The Complaint is brought against six Defendants. *Id.* at pp. 3-4. Sealed Defendant 1 is alleged to be a "nonprofit corporation" that "operates multiple housing and supportive-services programs for homeless and/or mentally disabled individuals" with the financial support of both federal and state funding. *Id.* at ¶¶ 11-14. Sealed Defendant 2 is alleged to be "the landlord of the residential facility referred to . . . as Location 2, which provides permanent supportive housing." *Id.* at ¶ 16. Sealed Defendants 3 through 6 are alleged to be "employees or agents" of Sealed Defendants 1 and/or 2. *Id.* at ¶¶ 17-21.[1]

According to the Complaint, Plaintiff became eligible for placement in the facility operated by Sealed Defendants 1 and/or 2, and resided at Sealed Defendant 1's facility

---

[1] Plaintiff has filed a notice *in camera* that identifies the names of each of the parties. Dkt. No. 6; Text Entry dated April 6, 2026.

from approximately March 27, 2025, to September 23, 2025.  *Id.* at ¶¶ 25 & 27.  The Complaint alleges that, "[i]n April 2025, Plaintiff was assigned a roommate," and "[o]n or about May 16, 2025, that roommate began directing overt racial harassment and threats at Plaintiff, including repeated use of racial slurs."  *Id.* at ¶¶ 30-31.  "Plaintiff asked the roommate to stop, but the roommate refused."  *Id.* at ¶ 32.  On May 16, 2025, "Plaintiff promptly called" Sealed Defendant 3, who "did not answer," and thereafter called Sealed Defendant 1's "24-hour on-call number and reported the harassment."  *Id.* at ¶¶ 33-34.  Plaintiff complains that Sealed Defendant 1 "did not remove the roommate until May 19, 2025, three days after Plaintiff's initial report, and the roommate was transferred rather than terminated from the program."  *Id.* at ¶ 38.

Thereafter, the Complaint alleges that Defendants engaged in a pattern of retaliatory and discriminatory behavior toward him.  First, the Complaint alleges that, "[f]rom May 19, 2025, through September 23, 2025, Plaintiff remained alone in the two-bedroom . . . apartment and was not assigned another roommate."  *Id.* at ¶ 40.  The Complaint also alleges that Sealed Defendant 3 "began pressuring Plaintiff during mandatory twice-weekly meetings to leave . . . and find another place to live," even though "Plaintiff had only been [there] about two months" and was told "[a]t intake . . . that Plaintiff could remain . . . for up to one year."  *Id.* at ¶¶ 41-42 & 44.  "As

a result of that pressure," the Complaint alleges that "Plaintiff felt forced to seek alternative housing before he was ready." *Id.* at ¶ 49.

Second, the Complaint takes issue with Sealed Defendant 1's placement of Plaintiff at Location 2 rather than his requested and preferred placement at Location 1. *Id.* at ¶¶ 66 & 69. Plaintiff explains that he "preferred Location 1 because it was near his existing area, had public transportation, and was more diverse than Location 2," *id.* at ¶ 67, and that "Location 2 had a very small Black population, was overwhelmingly white, and had no public transportation." *Id.* at ¶ 68. Plaintiff claims that "this placement further isolated him and was part of the same retaliatory and discriminatory pattern." *Id.* at ¶ 70.

Third, the Complaint asserts that, when Plaintiff moved to Location 2 on or about September 23, 2025, he signed a written residential lease, but was not provided a copy of that lease until January 23, 2026. *Id.* at ¶¶ 71-72 & 76. The Complaint also alleges that Plaintiff was not provided with proof of payment of Plaintiff's rent at Location 2, which was "paid by DSS directly" to Sealed Defendants 1 and/or 2 from October 1, 2025, through February 2026, which "caused [Plaintiff] anxiety about housing stability." *Id.* at ¶¶ 77-79.

Finally, the Complaint references financial conflicts of interest existing at Sealed Defendant 1's facility, *id.* at pp. 8-9, and also alleges that Sealed Defendant 5 "attempted to pressure Plaintiff to apply again for public assistance benefits he was already receiving

through DSS" and "insisted he had to obtain renter's insurance, even though Plaintiff's lease . . . did not require renter's insurance as a condition of tenancy." *Id.* at ¶¶ 81 & 83.

## II. GOVERNING LEGAL STANDARD

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2]

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### III. DISCUSSION

### A. Plaintiff's claims pursuant to the ADA, RA, FHA, and Civil Rights Act

The ADA and RA both prohibit discrimination on the basis of disability. The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Similarly, the RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"Because the ADA and RA's statutory language is nearly identical, courts treat those claims identically." *Ramrattan v. New York*, 2025 WL 2549075, at *7 (N.D.N.Y. July 9, 2025), *report and recommendation adopted sub nom. Ramrattan v. Guzman*, 2025 WL 2315310 (N.D.N.Y. Aug. 12, 2025) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). To establish a violation under the ADA and the RA, a plaintiff must show that: (1) defendant "is an entity subject to the acts"; (2) plaintiff is a "qualified individual[] with a disability"; and (3) plaintiff was "denied the opportunity to participate in or benefit from [defendant's] services, programs, or activities or [defendant] otherwise discriminated against" plaintiff because of plaintiff's disability. *Id.* (quoting *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)) (internal quotation marks omitted).

Similar to the ADA and RA, the Civil Rights Act prohibits discrimination, but rather than limiting that prohibition to discrimination based on disability like the ADA and RA do, the Civil Rights Act prohibits discrimination based "on the ground of race, color, or national origin." *Smith v. Davis*, 2024 WL 2880751, at *5 (N.D.N.Y. Apr. 4, 2024), *report and recommendation adopted*, 2024 WL 2126729 (N.D.N.Y. May 13, 2024). To that end, the Civil Rights Act provides that "[n]o person in the United States shall . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* (quoting 42 U.S.C. § 2000d) (internal quotation marks omitted). To survive the pleading stage for a claim pursuant to the Civil Rights Act, a plaintiff must, at minimum, show "that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Davis v. Malloy*, 2018 WL 5793786, at *4 (D. Conn. Nov. 5, 2018) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)) (internal quotation marks omitted).

Finally, the FHA "broadly prohibits discrimination in housing," *Avila v. Acacia Network, Inc.*, 2024 WL 1659456, at *4 (S.D.N.Y. Apr. 15, 2024) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979)) (internal quotation marks omitted), whether based on "race, color, religion, sex, familial status, national origin, or disability." *Id.* (quoting 42 U.S.C. § 3604(a) & (f)(1)) (internal quotation marks omitted) (cleaned

up). Similar to the pleading requirement when stating a claim pursuant to the Civil Rights Act, to survive the pleading stage for a claim pursuant to the FHA, a plaintiff must, at minimum, show that his or her disability or race was at least a motivating factor with regard to his or her allegations of discrimination. *Id.*

Here, the Complaint makes only three conclusory references to any alleged discrimination by Defendants. First, the Complaint alleges that Plaintiff's placement at Location 2 rather than his requested and preferred placement at Location 1, Compl. at ¶¶ 65-66 & 69, "further isolated him and was part of the same retaliatory and discriminatory pattern." *Id.* at ¶ 70. Second, when discussing Sealed Defendant 5's "attempt[] to pressure Plaintiff to apply again for public assistance benefits he was already receiving through DSS" and insistence that Plaintiff "had to obtain renter's insurance, even though Plaintiff's lease . . . did not require renter's insurance as a condition of tenancy," *id.* at ¶¶ 81 & 83, the Complaint asserts that Sealed Defendant 5's "conduct was intended to create a pretext for removal from Location 2 and to impose an additional financial burden based on Plaintiff's race and/or disability." *Id.* at ¶ 86. Finally, the Complaint generally asserts that "[t]he conduct described" therein "included discrimination, retaliation, denial of fair housing opportunity, interference with housing placement, coercion, and unequal treatment on the basis of race and disability." *Id.* at ¶ 89.

- 9 -

However, the Complaint does not provide sufficient factual detail to support the aforementioned conclusory assertions that Defendants intentionally discriminated against Plaintiff, *see generally* Compl., and thereby fails to satisfy the pleading standards necessary to state claims pursuant to the ADA, RA, FHA, and the Civil Rights Act. *See, e.g.*, *Avila v. Acacia Network, Inc.*, 2024 WL 4108012, at *5-6 (S.D.N.Y. Aug. 26, 2024), *appeal dismissed* (Dec. 26, 2024) (dismissing plaintiff's claims of disability discrimination under the FHA, RA, and ADA because plaintiff's allegations were "conclusory and without factual support, and therefore do not satisfy the pleading requirements to state a claim of disability discrimination"); *Morris v. Martin*, 2016 WL 4059209, at *4 (N.D.N.Y. June 21, 2016), *report and recommendation adopted*, 2016 WL 4098611 (N.D.N.Y. July 28, 2016) (citing *Straker v. Metropolitan Transit Auth.*, 333 F. Supp. 2d 91, 100 (E.D.N.Y. 2004) ("[C]onclusory allegations, unsupported by facts will be rejected as insufficient to state a claim under the Civil Rights Act.")).

For purposes of the ADA and RA, Plaintiff has neither alleged that he was excluded from any of Defendants' services because of his disability, nor that any benefits were provided to some but denied to him because of his disability. *See Forziano v. Indep. Grp. Home Living Program*, Inc., 613 F. App'x 15, 18 (2d Cir. 2015). Likewise, for purposes of the FHA and the Civil Rights Act, no facts are alleged evidencing that either Plaintiff's disability or his race was a motivating factor for any of the acts taken by

- 10 -

Defendants. *See Avila v. Acacia Network, Inc.*, 2024 WL 1659456, at \*4; *Davis v. Malloy*, 2018 WL 5793786, at \*4.

It remains unclear to the Court how any of the acts taken by Defendants that are discussed in the Complaint are relevant to Plaintiff's claim that Defendants discriminated against him, whether based on his disabilities or his race.  Plaintiff notes his race when he discusses racial slurs made by his roommate and his own motivations for wanting to be placed at a different location, but fails to build a logical bridge between Defendants' actions and any alleged discrimination on the part of Defendants.  The Court is simply left to guess as to what relevance Plaintiff's race and disabilities have to any acts taken by Defendants that are mentioned in the Complaint.  Nor does the Complaint sufficiently identify these claims to permit the Court or Defendants to identify which statutes apply to the factual allegations.

In addition, an independent basis exists for dismissal to the extent that Plaintiff brings claims pursuant to the ADA, RA, and Civil Rights Act against the individual Defendants—namely, Sealed Defendants 3, 4, 5, and 6.  Plaintiff's claims pursuant to the ADA and the RA should be dismissed because neither statute provides for individual liability.  *Dees v. Zurlo*, 2024 WL 2291701, at \*16 (N.D.N.Y. May 21, 2024), *aff'd sub nom. Dees v. Knox*, 2025 WL 485019 (2d Cir. Feb. 13, 2025), *cert. denied*, 146 S. Ct. 201 (2025).  Likewise, Plaintiff's claims pursuant to the Civil Rights Act should also be

"dismissed with prejudice" because "Title VI does not provide for individual liability." *Smith v. Davis*, 2024 WL 2880751, at \*5 (quotation and internal quotation marks omitted).

### B. State Action

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). "A plaintiff pressing a claim of violation of his constitutional rights . . . is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). "State action requires both the exercise of some right or privilege created by the State and the involvement of a person who may fairly be said to be a state actor." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005)) (internal quotations and alterations omitted).

Here, the Complaint alleges that Defendants violated Plaintiff's rights under 42 U.S.C. §§ 1981, 1982, 1983, and 1985. Compl. at ¶¶ 1 & 88. However, the Complaint has not alleged any state action on the part of any of the Defendants. *See generally id.* Further, the Complaint does not allege any facts plausibly suggesting that Defendants

- 12 -

were engaged in a joint action with the State or its agents. *See generally id.* While the Complaint alleges that Sealed Defendant 1 "receives substantial federal and state funding," *id.* at ¶ 13, "[t]he fact that an entity receives public funds does not turn private action into state action." *Davenport v. Urb. Home Ownership Corp.*, 2026 WL 836698, at *5 (S.D.N.Y. Mar. 25, 2026). "Plaintiff provides no facts suggesting that Defendants, who appear to be administrators of federally subsidized housing" and their employees, "acted under color of state law." *Id.* Accordingly, the Court recommends that Plaintiff's claims pursuant to 42 U.S.C. §§ 1981, 1982, 1983, and 1985 be dismissed for failure to allege state action.

### C. State Law Claims

Having established that Plaintiff's federal claims are subject to dismissal, the only remaining claims that Plaintiff seeks to pursue are state law claims pursuant to various New York state statutes, including the New York State Human Rights Law, New York Real Property Law, and New York Mental Hygiene Law. Compl. at ¶¶ 1 & 88. However, "[f]ederal courts are courts of limited jurisdiction." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (quotations omitted). Jurisdiction in federal court generally exists only when diversity of citizenship is present. 28 U.S.C. § 1332. "To have complete diversity, 'each plaintiff's citizenship must be different from the citizenship of each

defendant.'"   *Johnson v. Glob. Promotion & Pub. Corp.*, 2013 WL 828744, at *1 (E.D.N.Y. Mar. 6, 2013) (quoting *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009)).

Here, the Complaint alleges that Plaintiff and Sealed Defendants 1 and 2 are residents of New York.  Compl. at pp. 2-4.  As a result, there is a lack of complete diversity, and no diversity jurisdiction exists in this case.  *See Butler v. Geico Gen. Ins. Co.*, 2019 WL 330591, at *3 (N.D.N.Y. Jan. 25, 2019), *report and recommendation adopted*, 2019 WL 652197 (N.D.N.Y. Feb. 15, 2019).

While a district court may exercise supplemental jurisdiction over state law claims if certain conditions are met, 28 U.S.C. § 1367(a), the court may decline to do so where it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Here, having recommended dismissal of the federal claims over which the Court has original jurisdiction, the Court also recommends that the District Court decline to exercise its supplemental jurisdiction over any state law claims that Plaintiff may be asserting.

### D. Motion to Proceed Under a Pseudonym

Also presently pending before the Court is Plaintiff's Motion to Proceed under Pseudonym.  Dkt. No. 3.  Plaintiff maintains that "public revelation of [his] identity

- 14 -

presents a substantial, non-speculative risk of severe psychological harm, stigma, renewed racial hostility, and deterrence from seeking further mental-health treatment or legal redress." *Id.* at p. 2.

Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties." FED. R. CIV. P. 10(A). "A party seeking to proceed under pseudonym bears a heavy burden, and will only be allowed to do so if private interests outweigh the countervailing public interest in full disclosure." *Doe v. Colgate Univ.*, 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016) (citation omitted). The Second Circuit has provided a non-exhaustive list of factors to consider in balancing a plaintiff's interest in anonymity against the public interest in disclosure and any prejudice against defendants. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008). Those factors are as follows:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the

public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (quotations, internal quotation marks, and citations omitted) (alterations in original). Application of these factors to the particular facts of a case "is left to the sound discretion of the district court." *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, 2012 WL 5899331, at *4 (S.D.N.Y. Nov. 26, 2012) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190)). "However, the bar to proceed in Court anonymously is high." *Doe v. Delta Air Lines, Inc.*, 2023 WL 7000939, at *2 (E.D.N.Y. Sept. 7, 2023) (citing cases).

### 1. Factor 1: Matters of Highly Sensitive and Personal Nature

The first factor concerns "whether the litigation involves matters that are highly sensitive and [of a] personal nature." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190 (quotation, internal quotation marks, and citations omitted) (alteration in original). Plaintiff argues that the Complaint involves allegations of a highly sensitive and highly personal nature, including discussion of Plaintiff's medical issues and housing vulnerability. Dkt. No. 3 at p. 5.

"Although many people understandably want to keep their medical conditions and treatment confidential, '[t]he fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name.'" *Doe v. M&T Bank Corp.*, 2022 WL

- 16 -

1114950, at *2 (W.D.N.Y. Apr. 14, 2022) (quoting *Rankin v. N.Y. Pub. Libr.*, 1999 WL 1084224, at *1 (S.D.N.Y. Dec. 2, 1999)) (citation omitted).

Much of the Complaint concerns purported violations of federal statutory law and asserts that Defendants have engaged in discriminatory and retaliatory conduct. *See generally* Compl. Such claims, though often involving sensitive topics, are not claims of a uniquely personal interest, and would, if true, be matters of significant public interest. Plaintiff's allegation that Defendants "discriminated against h[im] because of h[is] race . . . is not necessarily a highly sensitive matter requiring anonymity." *Doe v. Related Companies, LLP*, 2022 WL 4357615, at *2 (S.D.N.Y. Sept. 19, 2022) (quotation, internal quotation marks, and citations omitted).

Likewise, "[d]isability is not typically considered highly sensitive, and in any event must be pleaded - and hence disclosed - in every disability discrimination lawsuit." *Chestnut Hill NY, Inc. v. City of Kingston*, 2023 WL 8108645, at *3 (N.D.N.Y. Nov. 21, 2023) (quoting *Doe v. Black Diamond Cap. Mgmt. LLC*, 2023 WL 2648017, at *4 (S.D.N.Y. Mar. 27, 2023)) (internal quotation marks omitted) (alteration in original). The facts alleged in the Complaint also "do not present exceptional circumstances that in and of themselves justify overriding the constitutional presumption of openness" and "are not especially intimate compared to other ADA [and Civil Rights Act] cases in which plaintiffs have proceeded under their own names." *Rives v. SUNY Downstate Coll. of*

*Med.*, 2020 WL 4481641, at *2 (E.D.N.Y. Aug. 4, 2020) (quotation and internal quotation marks omitted) (citing cases).

This factor, therefore, does not weigh in favor of granting the Motion.

*2. Factors 2, 3, and 7: Resulting Harm, Severity of the Harm, and Confidentiality*

Factors two and three focus on the harm that identification would cause Plaintiff. The relevant inquiry for these factors is "whether disclosure of the plaintiff's name in the course of the lawsuit would 'uniquely' cause harm and 'how grave the resultant harm would prove to be.'" *Doe 1 v. Branca USA, Inc.*, 2022 WL 2713543, at *2 (S.D.N.Y. July 13, 2022) (quoting *Rapp v. Fowler*, 537 F. Supp. 3d 521, 529 (S.D.N.Y. 2021)). "[P]laintiff must establish with sufficient specificity the incremental injury that would result from disclosure of h[is] identity." *Doe v. Freydin*, 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021) (citing cases). Conclusory statements regarding harm are of "limited utility." *Rapp v. Fowler*, 537 F. Supp. 3d at 530.

Where a plaintiff claims that disclosure will harm his or her mental health, courts in the Second Circuit look for corroboration from medical professionals that detail the risk to plaintiff. *See*, *e.g.*, *Doe v. Weinstein*, 484 F. Supp. 3d 90, 95 (S.D.N.Y. 2020) ("Without corroboration from medical professionals . . . [plaintiff's] general allegation of potential trauma is 'mere speculation' about a risk of psychological injury that cannot support her motion to proceed under a pseudonym."); *Doe v. Smith*, 105 F. Supp. 2d 40,

43-44 (E.D.N.Y. 1999) (granting anonymity on reconsideration after plaintiff presented "specific evidence [from a medical expert] predicting that revelation of [plaintiff's] identity w[ould] likely cause psychological and emotional pain so intense that it would threaten her stability, her safety, and even her life"); *Doe v. Del Rio*, 241 F.R.D. 154, 161 (S.D.N.Y. 2006) (finding plaintiff failed to demonstrate risk of injury where letter from plaintiff's therapist failed to establish a link between public disclosure of plaintiff's name and psychological risk to plaintiff).

Here, Plaintiff makes conclusory assertions that denying his Motion "would heighten his reasonable fear of renewed racial hostility and community stigma" and "exacerbate [his] anxiety [about housing stability] and undermine his recovery." Dkt. No. 3 at p. 6. Plaintiff's claims are made generally and without medical corroboration, and he has not identified any particularized harm that would result from publicly disclosing his identity. *See generally id.* Plaintiff's assertions are also made "without citing any evidence to support that fear of harm from the general public." *Doe v. Skyline Auto. Inc.*, 375 F. Supp. 3d 401, 408 (S.D.N.Y. 2019). Further, as Plaintiff admits, Defendants already know his identity, Dkt. No. 3 at p. 3, and so it is unclear how proceeding anonymously would ameliorate any alleged fear of retaliation that Plaintiff has. Factors two and three, therefore, weigh against granting the Motion.

The seventh factor, which "inquires as to the status of a plaintiff's confidentiality thus far in the litigation." *Doe v. Skyline Auto. Inc.*, 375 F. Supp. 3d at 407. Here, thus far, Plaintiff has sought to protect his anonymity and there is no indication that he has publicly disclosed this lawsuit elsewhere. This factor thus weighs marginally in favor of Plaintiff.

### 3. Factor 4: Vulnerability

The fourth factor requires courts to determine "whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190 (citations omitted). Age is a critical factor in making this determination because "courts have been readier to protect the privacy interest of minors in legal proceedings than of adults." *Rapp v. Fowler*, 537 F. Supp. 3d at 530 (quotation and internal quotation marks omitted). Consequently, "[i]f a plaintiff is not a child, this factor weighs against a finding for anonymity." *Id.* (quotation and internal quotation marks omitted). Because Plaintiff is an adult and "provides no evidence that h[is] age makes h[im] particularly vulnerable to the possible harms of disclosure," the fourth factor weighs against allowing Plaintiff to proceed anonymously in this matter. *Doe v. Skyline Auto. Inc.*, 375 F. Supp. 3d at 406.

- 20 -

### 4. Factors 5, 8, and 9: Public Interest

Factors five, eight, and nine all relate to the public's interest in knowing Plaintiff's identity and all weigh against Plaintiff proceeding anonymously.

The fifth factor considers "whether the suit . . . challeng[es] the actions of the government or that of private parties." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190 (citation omitted). Here, all named Defendants are private parties. This factor does not favor Plaintiff. "When a lawsuit challenges governmental actions, actors, or policies, the plaintiff has a strong interest in proceeding anonymously." *Doe v. Rensselaer Polytechnic Inst.*, 2019 WL 13472598, at *3 (N.D.N.Y. Aug. 21, 2019) (quoting *Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *6 (N.D.N.Y. Sept. 10, 2018), *report and recommendation adopted*, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020)) (internal quotation marks and citations omitted). This action between private parties does not bring about the considerations that would be applicable in a suit against government entities.

"The eighth factor weighs whether the public's interest in the litigation is furthered by revelation of the plaintiff's identity." *Doe v. Leonelli*, 2022 WL 2003635, at *4 (S.D.N.Y. June 6, 2022). "There is also a public interest in the accused being able to publicly confront an accuser, a right that would be undermined by Plaintiff's anonymity." *Doe v. Combs*, 2024 WL 863705, at *5 (S.D.N.Y. Feb. 29, 2024) (citing *Doe 1 v. Branca USA, Inc.*, 2022 WL 2713543, at *2)). The public also has a strong interest in knowing

- 21 -

the underlying facts of a litigation, including the identities of litigants. *See*, *e.g.*, *Doe v. Leonelli*, 2022 WL 2003635, at *4 ("[T]he public has a significant interest in open judicial proceedings and the public's interest in the litigation is furthered by transparency, including exposure of the parties' identities."). Further, "[t]he issues presented in this case – the safe housing of individuals with disabilities – is one of clear public importance." *Chestnut Hill NY, Inc. v. City of Kingston*, 2023 WL 8108645, at *3. Nothing in Plaintiff's submission overcomes these presumptions.

"The ninth factor looks to whether, because of the purely legal nature of the issues presented, there is an atypically weak public interest in knowing the litigants' identities." *Rapp v. Fowler*, 537 F. Supp. 3d at 532. This action does not involve a purely legal issue, but likely will involve significant factual disputes. The allegations here are factual in nature, involving "particular actions and incidents." *Doe v. Weinstein*, 484 F. Supp. 3d at 98 (internal quotation marks and citation omitted). Thus, "open proceedings . . . benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, 2012 WL 5899331, at *8. Accordingly, the public interest factors weigh against anonymity in this action.

- 22 -

### 5. Factor 6: Prejudice to Defendants

Factor six requires the Court to analyze the prejudice Defendants would face if Plaintiff is permitted to proceed anonymously. "Courts will examine the reputational damage to defendants, difficulties conducting discovery, and fundamental fairness of proceeding anonymously." *Doe v. Townes*, 2020 WL 2395159, at *5 (S.D.N.Y. May 12, 2020) (citation omitted).

Here, accepting as true Plaintiff's assertion that "Defendants will know or can readily learn Plaintiff's identity through service of the Complaint and through discovery," Dkt. No. 3 at p. 8, the Court finds that "allowing Plaintiff to proceed under a pseudonym would not likely impede Defendants' ability to investigate Plaintiff's allegations or to conduct initial discovery." *Roe v. Does 1-11*, 2020 WL 6152174, at *3 (E.D.N.Y. Oct. 14, 2020). "But courts have also considered the later stages of a case and recognized the danger that cross-examination of an anonymous plaintiff could be compromised and the risk that a jury would not be able to properly assess the credibility of a plaintiff proceeding under a pseudonym." *Id.* (citing *Doe v. Delta Airlines, Inc.*, 310 F.R.D. at 225). "Allowing a plaintiff to proceed anonymously may also hamper witnesses coming forward of their own volition to either bolster or refute a plaintiff's allegations." *Id.* (citing *Doe v. Delta Airlines, Inc.*, 310 F.R.D. at 225).

This factor thus is neutral or weighs marginally against Plaintiff.

- 23 -

### 6. Factor 10: Alternative Mechanisms

Finally, factor ten "examines whether there are other mechanisms, including sealing, redaction of documents, protective orders and confidentiality agreements, that could protect the plaintiff's confidentiality." *Doe v. Combs*, 2024 WL 863705, at *5. Here, should this matter proceed to discovery, the use of confidentiality stipulations and protective orders should amply address the concerns raised by Plaintiff regarding confidentiality of his medical and mental health information. Thus, the tenth factor also weighs against Plaintiff's anonymity.

Considering the relevant factors in their totality, Plaintiff has not carried the "high" burden he carries on this Motion to overcome the presumption that he should be named in the Complaint. *Doe v. Delta Air Lines, Inc.*, 2023 WL 7000939, at *2. The Motion, therefore, is denied.

## E. Leave to Amend

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Because Plaintiff may be able to allege additional facts to state a valid claim against the Defendants pursuant to the

FHA, as well as against Sealed Defendants 1 and 2 pursuant to the ADA, RA, and the Civil Rights Act, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend these claims.  The Court does not, however, make the same finding with regard to Plaintiff's claims pursuant to federal civil rights statutes and the Fourteenth Amendment given the absence of state action, as well as Plaintiff's claims against Sealed Defendants 3-6 pursuant to the ADA, RA, and Civil Rights Act given that individual liability is unavailable.  *See supra* at pp. 6-13.  "[A]n opportunity to amend is not required where 'the problem with [the plaintiff's] causes of action is substantive' such that 'better pleading will not cure it.'"  *Davis v. Cap. City Rescue Mission*, 2013 WL 6062325, at \*2 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)) (alteration in original).  Because there is no indication that Defendants are state actors such that Plaintiff could raise claims pursuant to federal civil rights statutes and the Fourteenth Amendment, and because the ADA, RA, and Civil Rights Act do not provide for individual liability against Defendants 3-6, the Court recommends that these claims be dismissed with prejudice and without leave to amend.

The Court advises Plaintiff that, should he be permitted to amend his Complaint, any amended pleading he submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  Any such amended complaint, which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff, must contain sequentially numbered

paragraphs containing only one act of misconduct per paragraph. Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all claims he intends to assert and must demonstrate that a case or controversy exists between Plaintiff and Defendants that Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that Defendants violated a law, he should specifically refer to such law. Given that the Court has denied Plaintiff's Motion to Proceed under Pseudonym, *see supra* at pp. 14-15, any amended complaint submitted by Plaintiff should specifically identify himself by name as well as each and every Defendant he intends to sue.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Complaint (Dkt. No. 1) be **DISMISSED** as set forth above; and it is

**ORDERED**, that Plaintiff's Motion to Proceed Under Pseudonym (Dkt. No. 3) is **DENIED**; and is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

- 26 -

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: May 18, 2026
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[3] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).